UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DAWN STEPHENSON-ORTIZ,

        Plaintiff,

        v.   **MEMORANDUM AND ORDER**

SIMON'S AGENCY, INC.,   19-CV-2639 (RPK) (RML)

        Defendant.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

Plaintiff Dawn Stephenson-Ortiz filed this action seeking damages for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Defendant moves for summary judgment, arguing that plaintiff lacks Article III standing. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

The following facts—taken from the parties' Local Rule 56.1 statements, depositions, and evidentiary filings—are uncontradicted by other evidence unless noted.

    **A.**    **Factual Background**

Simon's Agency, Inc. is a collection agency that operates in New York. Def.'s Resp. to Pl.'s Rule 56.1 Statement ¶¶ 3–4 ("Def.'s 56.1 Resp.") (Dkt. #54). In December 2018, defendant sent plaintiff a debt collection letter. *Id*. at ¶ 17; *see* Am. Compl., Ex. 1 ("Debt Collection Letter") (Dkt. #12-1). The letter indicated that plaintiff owed $2,257.87 to Raymour & Flanagan, a furniture store. *See* Debt Collection Letter 1. The letter also stated in bold and capital letters, "we report delinquent accounts to the credit bureau." *Ibid*.

The parties dispute whether plaintiff owed a debt to Raymour on the date the letter was sent and, if she did, in what amount. *See* Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 1 (Dkt. #55-

1

1). According to defendant, plaintiff owed Raymour the amount stated in the letter. *Id*. at ¶¶ 1, 4. Plaintiff contends that although she had previously incurred a $3,300 debt to Raymour, she had fully paid off the debt by the time the letter was sent. *Id*. at ¶ 1. Plaintiff asserts that she "was confused upon receipt of the Letter, insofar as she did not owe any monies to Raymour & Flanagan." Def.'s 56.1 Resp. ¶ 27; *see* Decl. of Matthew Bizzarro, Ex. 4, at 46:24–47:22 ("Stephenson-Ortiz Depo.") (Dkt. #46-4).

Plaintiff did not send defendant any money, and defendant eventually reported the alleged debt to Experian. *See* Def.'s 56.1 Resp. ¶ 36. Defendant asserts that it reported the debt in April 2019, but plaintiff contends that defendant did so in July 2019—more than two months after plaintiff filed suit. *Ibid.*; *see* Compl. (Dkt. #1) (filed May 5, 2019). According to plaintiff, defendant "never intended to report the alleged Debt to 'the credit bureau'" and did so only in response to plaintiff's lawsuit. *See* Def.'s 56.1 Resp. ¶ 35.

Since plaintiff received the debt collection letter, there have been thirty-six "hard inquiries" on plaintiff's credit report. Letter in Resp. to Feb. 1, 2023 Order, Ex. 1, at 2–6 (Dkt. #79-1). "Hard inquiries are requests for . . . consumer information based on an action or process initiated by [the consumer] generally related to a credit or other monetary obligation . . . . Hard inquiries are displayed to companies that receive [the] consumer report and may stay on [the] report at least two years." *Id*. at 1.

B. **Procedural Background**

In May 2019, plaintiff sued defendant, alleging five violations of the FDCPA. *See* Compl. ¶¶ 20–98. After summary judgment practice and plaintiff's dismissal of two claims, three claims remained: (i) sending a debt collection letter overstating the amount of debt owed in violation of 15 U.S.C. § 1692g(a)(1), Am. Compl. ¶¶ 27–38 (Dkt. #12); (ii) falsely representing the amount,

2

character, or legal status of debt and engaging in false, deceptive, or misleading tactics in connection with the collection of debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10), Am. Compl. ¶¶ 39–59; and (iii) threatening to report the alleged debt to "the credit bureau" while lacking the intent to do so in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10), Am. Compl. ¶¶ 103–13. *See* Nov. 12, 2021 Order (dismissing a claim relating to defendant's website); Dec. 3, 2021 Order (dismissing an overshadowing claim).

Defendant filed a second motion for summary judgment, arguing that plaintiff lacks Article III standing to bring her remaining claims. *See* Mem. in Supp. of Def.'s Second Mot. for Summary Judgment 3–8 (Dkt. #75). I exercise my discretion to consider a second summary judgment motion because the Court has "an independent obligation to assure that standing exists," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009), and defendant did not raise its standing argument in the previous motion, *see* Mem. in Supp. of Def.'s First Mot. for Summary Judgment 5–13 (Dkt. #49).

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment motion may be used to challenge whether there is any genuine dispute of material fact as to the plaintiff's standing. *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003) (collecting cases and noting that standing may be challenged "on summary judgment or even at trial"); *see also, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). In determining whether there is a genuine issue of material fact, a court evaluates the

3

whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *See ibid*. A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "The party asserting jurisdiction," here plaintiff, "bears the burden of proof as to standing." *Nat. Res. Def. Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013). "To defend against summary judgment for lack of standing, a plaintiff 'must set forth by affidavit or other evidence specific facts' supporting standing, as is generally required under Rule 56." *Ibid*. (citation omitted).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quotation marks, alterations, and citation omitted).

## DISCUSSION

Defendant's motion for summary judgment is granted.

Federal courts may adjudicate only lawsuits that present a "case or controversy." U.S. Const. art. III, § 2. And a lawsuit presents a case or controversy only if the plaintiff has standing to litigate the grievance she presents. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Standing does not exist in every case in which "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S.

4

330, 341 (2016). Instead, the plaintiff must have "suffered an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan*, 504 U.S. at 560–561). "[W]hether a harm qualifies as 'concrete' hinges on 'whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 63 (2d Cir. 2021) (quoting *TransUnion*, 141 S. Ct. at 2204). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion*, 141 S. Ct. at 2203 (citation and quotation marks omitted).

"[I]n a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id*. at 2210–11. If a person is exposed to a risk, but the risk does not actually manifest itself in some injury, that is generally "cause for celebration, not a lawsuit." *Id*. at 2211 (discussing hypothetical in which a reckless driver is dangerously swerving across lanes, thereby exposing a fellow driver "to a risk of future harm," but no accident occurs). Accordingly, a plaintiff seeking damages must demonstrate either "that the risk of future harm materialized" or that the plaintiff was "independently harmed by [her] exposure to the risk itself." *Id*. at 2211.

Plaintiff has not identified a harm sufficient to give rise to Article III standing. Plaintiff asserts that she suffered a concrete injury because she experienced "a reduction in [her] consumer credit rating" and because "there have been approximately [thirty-six] hard inquiries" on her credit report. Pl.'s Mem. in Opp'n to Second Mot. for Summary Judgment 2, 4 (Dkt. #76). But these allegations, standing alone, do not give rise to a concrete injury under Article III.

5

Courts in this Circuit have consistently held that "[a] lowered credit score in and of itself is not a concrete harm" under Article III. *Zlotnick v. Equifax Inf. Servs., LLC*, 583 F. Supp. 3d 387, 392 (E.D.N.Y. 2022); *see, e.g.*, *Maddox*, 19 F.4th at 65 (holding that an allegation that defendant "adversely affected [plaintiffs'] credit . . . making it difficult to obtain financing" is "incapable of giving rise to Article III standing" where "it is not alleged that this purported risk materialized"); *Grauman v. Equifax Inf. Servs., LLC*, 549 F. Supp. 3d 285, 292 n.3 (E.D.N.Y. 2021); *Krausz v. LoanDepot.com, LLC*, No. 22-CV-152 (VB), 2022 WL 16960928, at *2 (S.D.N.Y. Nov. 16, 2022); *Lodhi v. JHPDE Fin. 1, LLC*, No. 22-CV-5434 (JMA) (JMW), 2022 WL 17363935, at *1 (E.D.N.Y. Oct. 21, 2022); *Spira v. TransUnion LLC*, No. 21-CV-2367 (KMK), 2022 WL 2819469, at *5 (S.D.N.Y. July 19, 2022). Accordingly, plaintiff cannot establish Article III standing from the mere fact that her credit score may have been adversely affected.

Likewise, courts in this Circuit have held that the mere "allegation that [plaintiff] experienced 'hard and soft pulls' on his credit file is insufficient to confer standing." *Krausz*, 2022 WL 16960928, at *4; *see id*. at *3 ("[E]ven if the Credit Reports clearly evidence a hard inquiry, . . . they [do not] show plaintiff suffered an actual credit denial, reputational harm, or any other concrete adverse consequences" sufficient to give rise to standing."); *see also Rosenberg v. LoanDepot, Inc.*, No. 21-CV-8719 (PMH), 2023 WL 1866871, at *4 (S.D.N.Y. Feb. 9, 2023) (finding no standing where "Plaintiff simply fails to allege that she faced any real-world—tangible or intangible—consequences from any pulls on her Credit Report."); *Campbell v. Portfolio Recovery Assocs., LLC*, No. 21-CV-1322 (PKC) (RML), 2022 WL 657225, at *1 (E.D.N.Y. Mar. 4, 2022) ("Damage to personal credit and vague claims of 'attempts to get financing' and 'negative

impact,' without an allegation that such damage resulted in a materialized injury, or a sufficiently imminent and substantial risk of injury, are insufficient to confer standing.").

Plaintiff identifies no actual harm resulting from her damaged credit score or the hard inquiries on her credit report. For example, plaintiff identifies no evidence from which a reasonable jury could conclude that she experienced "denials of credit and financing opportunities, limited access to credit, increased cost of credit, [or] increased costs for services factoring credit rating in pricing." *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 274 (S.D.N.Y. 2020). And while plaintiff asserts in her memorandum of law that defendant "caus[ed] her to either be denied credit or increase the cost of obtaining such credit," Pl.'s Mem. in Opp'n to Second Mot. for Summary Judgment 2, plaintiff cites no evidence corroborating this assertion. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984) (holding that statements in a memorandum of law are insufficient to defeat summary judgment). Indeed, the Court directed plaintiff to file a supplemental letter identifying evidence supporting her asserted injuries, *see* Feb. 1, 2023 Order; Fed. R. Civ. P. 56(e)(1), and plaintiff cited only her credit score and credit report, *see* Letter in Resp. to Feb. 1, 2023 Order, neither of which demonstrates an injury sufficient to give rise to Article III standing, *see Nat. Res. Def. Council*, 710 F.3d at 79 (stating that a plaintiff must set forth "specific facts" supporting standing in order to defend against summary judgment).

Moreover, plaintiff does not argue that she suffered a reputational injury due to the dissemination of her credit report. *Cf. TransUnion*, 141 S. Ct. at 2208 (holding that "the publication to a third party of a credit report bearing a misleading" alert labeling the consumer as a "potential terrorist" caused a harm analogous to "the reputational harm associated with the tort of defamation"). Accordingly, the Court concludes that plaintiff has forfeited this argument. *See In re Congregation Birchos Yosef*, 699 F. App'x 91, 92 (2d Cir. 2017) (holding that a party's

7

"alternative theories of standing were not raised before the district court, and so they have been forfeited").

But even if the Court liberally construed plaintiff's brief to raise a reputation-based argument, it is not persuasive. In *TransUnion*, the Supreme Court concluded that a class of plaintiffs suffered a reputational injury because "TransUnion provided third parties with credit reports containing . . . alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals." 141 S. Ct. at 2209. The Court reasoned that "a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party," and "[t]he harm from being labeled a 'potential terrorist' bears . . . a sufficiently close relationship to the harm from a false and defamatory statement." *Ibid*. "That type of allegation is simply absent here. There is no comparable allegation of reputational harm where, via [hard inquiries], existing creditors of Plaintiff's were merely able to see her Credit Report." *Rosenberg*, 2023 WL 1866871, at *4.

Finally, plaintiff's assertion that she "was confused upon receipt of the Letter" is insufficient to confer standing. Def.'s 56.1 Resp. ¶ 27. "[T]he state of confusion is not itself an injury [for purposes of Article III]." *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (citation omitted); *see TransUnion*, 141 S. Ct. at 2214; *see also Garland v. Orlans, PC*, 999 F.3d 432, 437 (6th Cir. 2021) ("Confusion does not have 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.'") (quoting *Spokeo*, 578 U.S. at 341); *Faherty v. Rubin & Rothman, LLC*, No. 3:21-CV-650 (AWT), 2022 WL 1025958, at *5 (D. Conn. Apr. 6, 2022) (collecting cases).

8

## CONCLUSION

Defendant's motion for summary judgment is granted.

SO ORDERED.

                                           /s/ *Rachel Kovner*
                                          RACHEL P. KOVNER
                                          United States District Judge

Dated:        March 28, 2023
               Brooklyn, New York